SILAS W. TOWLE v. THE IONIA, EATON & BARRY FARMERS' MUTUAL FIRE INSURANCE COMPANY.

*Fire insurance—Forfeiture—Waiver—Error without prejudice.*

1. Where, in a suit upon an insurance policy, the testimony offered to show a waiver by the company of an alleged forfeiture is undisputed, and open to but one inference, and that favorable to the claim of waiver, the jury should be instructed that a waiver is shown as matter of law; citing *Richards v. Insurance Co.*, 60 Mich. 427; *Carpenter v. Insurance Co.*, 61 Id. 635; *Marthinson v. Insurance Co*, 64 Id. 372; *Cobbs v. Fire Association*, 68 Id. 465; *Cleaver v. Insurance Co.*, 71 Id. 421.

2. The failure of the court in such a case to state to the jury what facts would constitute a waiver, and permitting them to find it as matter of fact from insufficient evidence, is non-prejudicial error.

3. The fact that a mutual fire insurance company defends against a claim for loss on the ground of a violation by the insured of certain by-laws of the company, the penalty for which does not forfeit the policy, but only the right to recover for a loss thereunder, is not inconsistent with the action of the board of directors in treating the policy as in force by assessing it after such loss.

4. Where an insurance company, with full knowledge of the facts. afterwards relied upon in support of its claims of forfeiture for the alleged false swearing of the insured in making out. proofs of loss, and for the violation of one of its by-laws, bases its refusal to pay the loss solely upon the failure of the insured to state in his application for insurance the true condition of the title to the property, after which he is. subjected to loss of time in trying to adjust the loss, and incurs the expense of bringing suit for its recovery, the company is estopped from asserting such claims of forfeiture as a defense in said suit; citing *Castner v. Insurance Co.*, 46 Mich. 15,. 50 Id. 273; *Richards v. Insurance Co.*, 60 Id. 420; *Cleaver v. Insurance Co.*, 71 Id. 421.

5. A mutual fire insurance company may, in this State, waive a forfeiture of its policy if its assumed action is taken by those authorized to act for it, and with full knowledge of the facts;.

citing *Castner v. Insurance Co.,* 46 Mich. 15; *Olmstead v. Insurance Co.,* 50 Id. 200; *Planing-Mill Co. v. Insurance Co.,* 72 Id. 654.

Error to Ionia. (Smith, J.) Argued March 1 and 2, 1892. Decided April 8, 1892.

*Assumpsit.* Defendant brings error. Affirmed. The facts are stated in the opinion.

*Davis & Nichols (F. C. Miller,* of counsel), for appellant.

*Mitchel & Hawley,* for plaintiff.

MONTGOMERY, J. The plaintiff recovered a verdict in the Ionia circuit court on a policy of insurance covering his barn and sheds, farm implements, stacks of hay and grain, and other property.

The defenses relied upon were:

1. That the fire was occasioned because of the plaintiff's failure to observe by-law 18, which contained provisions as follows:

"This company will be liable for a loss occasioned by the use of steam-engines for threshing, provided some suitable person shall keep watch around the engine at all times after the fire is kindled in such engine until the fire is put out. * * * But if the engine used is known to be in any way defective, or if any one of the conditions herein named is not complied with, this company will not be liable for any loss sustained from the use of engines for threshing."

2. Misstatements contained in the application for insurance relative to the plaintiff's title and to the incumbrances upon the property.

3. A violation of by-law 7, which provides for proofs of loss, and contains a provision that—

"If there be any fraud, or false swearing with fraudulent intent, the claimant shall forfeit all claim by virtue of this policy for such loss."

The fact appears undisputed that the personal property insured was covered by chattel mortgages which were not mentioned in the application. The plaintiff testifies that

he understood the statements in the application to relate to the real estate, and further testifies that the fact that there was an incumbrance upon the personal property was brought to the attention of the secretary when the policy was written, and that, as he was not asked to note that fact in the application, he deemed it unnecessary. This is disputed by the secretary. The plaintiff further claims that the company has waived its right to insist upon the forfeiture of the policy upon this ground.

It also appears that in making proofs of loss the plaintiff swore that he—

"Was the sole owner of the property lost, and that there is or was no other incumbrance on the same, except that mentioned in my application for insurance, being No. 5,774, and that I have complied with all the by-laws of the company printed on my said policy."

Admittedly this does not state the exact facts as to incumbrances, but it is claimed on behalf of the plaintiff that no fraud was intended; that these proofs were prepared by the secretary; that the plaintiff signed them without consideration; and it is further contended that before the proofs were signed the defendant's agent knew of the incumbrances, and took this means to entrap plaintiff, and did not insert this statement with a view to relying upon it, and that the company was not in fact misled by it. It is also insisted that this defense was waived.

As to the defense that the plaintiff failed to observe by-law 18, it is claimed by plaintiff (1) that it was substantially observed, as a matter of fact; (2) that the presence of the engine did not cause the fire; and it is further claimed that any defense on this ground has been waived.

Shortly after the loss was sustained, a committee of the board of directors, including the president and

secretary of the company, visited the plaintiff's farm
where the fire occurred, and proofs of loss were made
out and taken away by the secretary. A few days later
the secretary wrote plaintiff the following letter:

"SILAS W. TOWLE,
    "Lowell, Mich.: The statement of loss made by
you October 22 has been examined by the adjusting com-
mittee of the company, and by them considered as rather
unsatisfactory. I would like to have you call at the
office as soon as convenient and talk this matter over.
Any time next week will do if convenient to you.
Respectfully yours,
                        "J. WARREN PEAKE,
                                Secretary."

The plaintiff went to Ionia, and was there informed
by the secretary that the adjusting committee declined
to adjust the loss, and who told him that the reason it
was unsatisfactory was that the company had been
deceived and misled into issuing the policy, because the
state of the title and incumbrances had not been correctly
stated in his application. This was the only reason
assigned, and at the same time Mr. Towle was advised to
appear before the full board and present his claim. In
the mean time an assessment had been made upon the
policy, and on December 28, 1889, plaintiff paid his assess-
ment on his policy, and the board then passed a resolu-
tion refusing to pay the loss. The resolution assigned
no reason for this refusal. At the same meeting an
assessment of two-tenths of 1 per cent. was ordered.
Some time after the assessment roll was made out the
plaintiff was assessed on his policy $6.40. On May 31 a
notice of assessment was sent to the plaintiff, as follows:

"SILAS W. TOWLE:
    "At a meeting of the board of directors of said com-
pany, held in the city of Ionia, January 15, 1890, a *pro
rata* assessment of two-tenths of one per cent. was
ordered, made payable during the month of June, 1890;

and, in case of policies canceled since that date, a further *pro rata* assessment of such canceled policies for all losses and expenses of the company from said 15th day of January, 1890, to date of cancellation, for not later than April 15, 1890. Your assessment on your policy No. 5,774, $6.40. You will please pay the same during the month of June, 1890."

This is followed by a statement as to whom and where the assessment can be paid; calls attention to certain sections of the charter and by-laws; is followed by a list of losses that had been adjudged from April 4, 1889, to January 15, 1890; and then follows a list of losses resisted, —George W. Van Alstine, Oneida, $360, and Silas W. Towle, of Boston, $1,600; and is signed, "J. Warren Peake, Sec." On the 30th day of June, Mr. Towle paid his assessment, and took a receipt, reading as follows:

"June 30, 1890.

"Received of Silas W. Towle, for assessments June, 1890, for losses by fire or lightning, by Ionia, Eaton & Barry Farmers' Mutual Fire Insurance Company, $6.40. No. 5,774.

"J. WARREN PEAKE, Agent,
"per L."

The controlling questions relate to the effect of these assessments and payments by the plaintiff, as tending to show waiver, and as to the waiver of the defenses under by-laws 7 and 18 by other acts of the company; the plaintiff contending that, as to all the defenses except the misstatements relative to the condition of the title, the defendant estopped itself by stating to the plaintiff that it relied for its defense on the misstatements relative to the condition of title, and that the plaintiff thereafter incurred expenses in attending upon the board, making his proofs of loss, and instituting his suit, which he would not have incurred had the defenses now urged been set up. The plaintiff further insists that the defense depending upon the

misstatements as to title was waived by the assessments made upon the policy, after such misstatements were known to have been made and after the loss occurred.

It is most strenuously insisted on the part of the defendant that the court erred in failing to discriminate between facts which would show a waiver of the defendant's right to avoid the policy for misrepresentation as to the state of title and incumbrances, and the acts of alleged waiver in asserting as the only point of defense the misrepresentations, by which it was claimed the defenses depending upon by-laws 7 and 18 were waived. The instruction complained of is as follows:

"If the company, after knowledge of the facts, has done something which gave the plaintiff the right to think that the defendant regarded it as a subsisting contract, upon which the other party has relied, that is, upon which the plaintiff has relied, and done something so that now it would be inequitable to permit the defendant to insist upon the fraud claimed, then it would be held to be estopped from asserting the fraud; so that, if you conclude that Towle understood that the company was asserting it by its acts, asserting the contract to be valid between them, and was led to so believe by the acts of the company, and had the right from its acts to so understand, and paid the money because of such understanding on his part, then the company would be estopped from asserting that this policy was obtained by fraud, or that there was fraud or false swearing after the fire, or that by-law No. 18 was not complied with, if the fire was caused by the fire from the engine."

This portion of the charge is open to the criticism passed upon it by defendant's counsel, for it was not inconsistent with the defendant's claim that the policy continued in force for its officers to insist upon the defense, as to the claim for loss under it, that the plaintiff had violated by-law 18, or that he had been guilty of willful false swearing with intent to defraud in making proofs of loss. It will be noticed that the penalty under

neither of these by-laws is a forfeiture of the policy, but it is provided in the one case that, "if there be any fraud, or false swearing with fraudulent intent, the claimant shall forfeit all claim by virtue of this policy for such loss;" and, in case of violation of by-law 18, that "this company will not be liable for any loss sustained from the use of engines for threshing." Plaintiff's counsel, in effect, concedes that this instruction, standing by itself, is not strictly accurate. But he insists—

1. That the error was cured by subsequent instructions.
2. That it conclusively appears that the defendant company waived this defense, by placing the defense on the sole ground of deception in issuing the policy.
3. That there was really no evidence that there was willful false swearing, upon which the defendant relied, or that by-law 18 was violated.

Without reviewing the testimony at length, we think this third claim of plaintiff cannot be allowed. There was evidence for the jury on both questions, and while the facts and circumstances strongly support the plaintiff's claim that the misstatements in his proofs of loss were not made with intent to defraud, yet this was a question for the jury, as was also the question as to whether there was a substantial violation of by-law 18.

Later in his charge the court did instruct the jury as follows:

"If there was such false swearing with fraudulent intent, it is a perfect defense, and the plaintiff cannot recover unless defendant has waived its right to insist upon it by its actions and conduct after full knowledge of such false swearing with fraudulent intent."

And, referring to the compliance with by-law 18, the court said:

91 MICH.—15.

"If not a substantial compliance, and the fire was occasioned by the engine, then there can be no recovery unless the company, with full knowledge of the facts, has waived its right.to insist upon this defense."

These instructions correctly state the law, so far as they went, but in each instance the court added:

"And the instructions already given as to waiver apply at this point."

We cannot say that these instructions cured the error. The facts which would constitute a waiver of these defenses were not stated, and the only instruction preceding these left the jury to find a waiver of the two named defenses, as well as that depending upon the alleged misstatements as to the title, from the mere fact that the company had continued to treat the policy as in force. See, as to effect of such error, *G. R. & I. R. R. Co. v. Monroe*, 47 Mich. 152.

But, notwithstanding the failure to state to the jury what facts would constitute a waiver of these defenses, if the plaintiff is right in his contention that, as matter of law, the undisputed testimony shows that these defenses were waived by the insurance company, it then became the duty of the court so to instruct the jury, and there was no error to the prejudice of the defendant in permitting the jury to find such waiver, as matter of fact, from insufficient evidence. It has been held that where the testimony offered to show waiver is undisputed, and open to but one inference, and that favorable to the claim of waiver, it is then the duty of the court to instruct the jury that a waiver is shown as matter of law. *Carpenter v. Insurance Co.*, 61 Mich. 635; *Marthinson v. Insurance Co.*, 64 Id. 372; *Cobbs v. Fire Association*, 68 Id. 465; *Cleaver v. Insurance Co.*, 71 Id. 421; *Richards v. Insurance Co.*, 60 Id. 427.

In the present case the committee of the board had informed itself of the causes of the fire by visiting the scene, and by taking plaintiff's statement as to its origin, and also knew of the existence of the incumbrances, and had the statements of plaintiff which are now claimed to be false and fraudulent in that regard in its possession. With this knowledge before it, the company placed its refusal to pay distinctly on the ground that there was nô liability for the reason that the application failed to state the facts as to title, etc. When the adjusting committee left Mr. Towle on the day the proofs were made up, they stated to him they would look the matter over and report. The letter of the secretary, stating that the proofs were rather unsatisfactory, and requesting plaintiff to call at the office of the company, followed. The plaintiff did call, and the position taken by the company was then stated to him. The plaintiff subsequently spent his time going back and forth between his residence and Ionia in the attempt to adjust the loss, and incurred the expense of bringing suit, before the two additional defenses were stated or claimed. Under these circumstances it would be proper to instruct the jury, as matter of law, that the defenses were waived. Good faith required that the company should apprise plaintiff fully of its position, and, failing to do this, it estops itself from asserting any defense other than that brought to the notice of the plaintiff. *Castner v. Insurance Co.*, 46 Mich. 15, 50 Id. 273; *Richards v. Insurance Co.*, 60 Id. 420; *Cleaver v. Insurance Co.*, 71 Id. 421.

The views above expressed render it unnecessary to discuss numerous of the asssignments of error.

One other claim of the defendant should not pass unnoticed. This claim is that there was no proper testimony tending to show waiver by the company of the forfeiture because of misstatements in the application. It

appeared that plaintiff had, before the policy in question was issued, been insured by a policy of $3,250 in the defendant company, and it is insisted that it was proper to assess the plaintiff on such former policy, and that the assessment was in fact made upon that policy. But, as matter of fact, the assessment appears on the assessment book opposite the policy of this number, and the notices refer to the policy by its number. It was therefore at least a question for the jury whether the defendant treated the policy in question as in force.

But it is claimed, further, that "it has been the recognized doctrine in those states where mutual insurance has been conducted that in an action on a policy issued by such a company, where it appeared that the company, with full knowledge that the policy had become void, assessed the plaintiff's premium note on account of losses which occurred after the forfeiture, and collected the assessment, this did not revive the policy, but was consistent with the right of the company to treat it as void;" and it is claimed that the testimony tending to show waiver in the present case should have been stricken out.

We think the rule in this State is that a mutual insurance company may waive a forfeiture of its policy if the assumed action of the company is by those authorized to act for it, and with full knowledge of the facts. See *Olmstead v. Insurance Co.*, 50 Mich. 200; *Castner v. Insurance Co.*, 46 Id. 15; *City Planing-Mill Co. v. Insurance Co.*, 72 Id. 654.

The case of *Williams v. Insurance Co.*, 19 Mich. 468, cited by defendant's counsel, is not in point upon the question involved here. In that case the policy contained a stipulation that, in case the notes or obligations given for the premium or any part thereof were not paid at the maturity, the full amount of the premium should be

considered as earned, and the policy should become void while said past-due notes, or any part thereof, remained overdue and unpaid. It was held that the court would give effect to this agreement, and construe it according to its plain terms, and that the receipt of payment after default was no waiver, because the company "was entitled to its full payment in any event and in any aspect of the case." In the present case the company had to choose between treating the contract of insurance as subsisting and treating it as void for misrepresentations.

We have examined all the assignments of error relied upon with care, and find no error to the prejudice of the defendant, and the judgment must be affirmed, with costs.

The other Justices concurred.